[Cite as *State v. Buford*, 2012-Ohio-1948.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 97218 and 97529**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERIC BUFORD

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-541097 and CR-541098

**BEFORE:**   Jones, J., Blackmon, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   May 3, 2012

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, 2nd Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Steven N. Szelagiewicz
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant, Eric Buford, appeals his convictions in two cases, which we have sua sponte consolidated for review and disposition. We affirm.

**{¶2}** In August 2010, Buford was charged in Case No. CR-541097 with having weapons while under disability and carrying a concealed weapon. He was also charged in Case No. CR-541098 with two counts of felonious assault with one- and three-year firearm specifications and one count of having weapons while under disability.

**{¶3}** Case No. CR-541098 proceeded to a trial by jury on the felonious assault charges. The trial court granted Buford's motion to bifurcate the disability charge and that count was tried to the bench.

**{¶4}** The following pertinent evidence was presented at trial.

**{¶5}** On July 21, 2010, James Scott went to visit his former girlfriend, LaToya Buford. Scott's friend, Rodell Booze, drove him to LaToya's house. Scott and LaToya began to argue about their recent breakup; Scott was standing at the front door. Scott testified that he saw Eric Buford, LaToya's brother, standing in the kitchen, pointing a gun at him. When Scott saw the gun, he slammed the door and took off running. Booze testified that he heard gunshots as he drove away; a bullet hit his driver's side window, shattering it. He further testified that he saw Buford shooting at his car.

**{¶6}** LaToya testified that she was arguing with Scott, who was standing at her

front door. They were arguing about $40 that Scott said she owed him because she had cut a hole in a pair of his jeans. She testified that she saw Scott slam the door and run, her brother point the gun at Scott, and then she heard gunshots. After the first gunshot, LaToya testified, she "hit the floor" and heard a total of three to four gunshots. LaToya asked her brother why he shot at Scott and, according to LaToya, he replied, "I don't know." He then told her not to tell anyone.

{¶7} Buford left the house, taking the gun with him. LaToya did not initially call the police but later gave a written statement implicating her brother. During trial, LaToya testified that her brother threatened to kill her if she told the police about the shooting.

{¶8} Cleveland Police Officer Mark Pesta testified that he responded to a call of shots being fired at two males. When he arrived on the scene, he observed a shattered driver's side window and a bullet hole in the inside of the passenger door of Booze's car. Detective James Bellanca testified that Booze's father later gave him the bullet that the body shop recovered from the car door.

{¶9} Buford was convicted of all charges in Case No. CR-541098. In Case No. CR-541097, Buford pleaded guilty to attempted having weapons while under disability and carrying a concealed weapon. The trial court sentenced Buford to a total of nine years in Case No. CR-541098 to run consecutive to a total of eight months in Case No. CR-541097, for a total sentence of nine years and eight months in prison.

{¶10} It is from this sentence that Buford now appeals, raising the following

assignments of error for our review:[1]

> I. The trial court erred when it failed to make mandatory findings before imposing consecutive sentences.
>
> II. The trial court erred in admitting unduly prejudicial hearsay evidence at trial over defense counsel['s] objection.
>
> III. Insufficient evidence supported a conviction for felonious assault and gun specifications.
>
> IV. The manifest weight of the evidence did not support a conviction for felonious assault or accompanying gun specifications.
>
> [V.] The trial court acted contrary to law when it imposed consecutive sentences without authority to do so under the Ohio Revised Code.
>
> [VI.] The trial court erred when it failed to make mandatory findings before imposing consecutive sentences.

## Hearsay Evidence

{¶11} In the second assignment of error, Buford argues that the trial court improperly allowed LaToya to refresh her memory using her written statement without laying a proper foundation.

{¶12} A trial court has broad discretion in determining the admissibility of evidence. *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984), citing *State v. Hymore*, 9 Ohio St.2d 122, 224 N.E.2d 126 (1967). Accordingly, an appellate court should not interfere with a trial court's evidentiary rulings absent an abuse of discretion. *Id.* "An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v.*

---

[1] We have renumbered the assignments of error for ease of review.

*Jackson*, 107 Ohio St.3d 53, 89, 2005-Ohio-5981, 836 N.E.2d 1173, citing *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶13}** Evid.R. 612 permits a party to use a writing to refresh a witness's recollection. But the witness is not permitted to read the writing aloud or have it otherwise placed before the jury. *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996). Rather, the witness reads the writing silently in order to refresh her recollection; if the writing refreshes the witness's recollection, the witness then testifies using present independent knowledge. *State v. Scott*, 31 Ohio St.2d 1, 5-6, 285 N.E.2d 344 (1972). It is this testimony, not the writing, that is the evidence. *State v. Woods*, 48 Ohio App.3d 1, 548 N.E.2d 954 (1st Dist. 1988).

**{¶14}** Buford urges this court to reverse his conviction arguing that the state failed to lay a proper foundation when it asked LaToya to read her written statement to police and then answer questions about the statement. We disagree.

**{¶15}** First, we note that Buford did not object at trial to LaToya using her written statement to refresh her memory.[2] While Crim.R. 52(B) permits a court to notice plain errors or defects that affect substantial rights although they have not been brought to the attention of the court, a reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at the syllabus. Plain error does not exist

---

[2]Although Buford's attorney objected as LaToya answered the prosecutor's questions after she looked at her statement, he did not object to the foundation or procedure by which LaToya refreshed her memory.

unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. *State v. Moreland*, 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

{¶16} During direct examination, the prosecutor asked LaToya what Buford told her immediately after the shooting. LaToya replied that she was confused and that looking at her statement to police may help her to refresh her memory because she completed her written statement shortly after the shooting. LaToya reviewed the statement at sidebar and then returned the statement to the prosecutor before continuing with her testimony. She then testified that Buford had told her that "if me, my mother, or James told the police what happened he'd come back and kill someone."

{¶17} Based on these facts, we find no error, plain or otherwise, with the manner in which the trial court allowed LaToya to refresh her memory.

{¶18} The second assignment of error is overruled.

Sufficiency and Manifest Weight of the Evidence

{¶19} In the third and fourth assignments of error, Buford claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶20} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. Thus, a

determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.* We find the manifest weight of the evidence argument dispositive in this case.

{¶21} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*

{¶22} When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶23} Buford argues that there was insufficient evidence to support his convictions and they were against the manifest weight of the evidence because the state could not show that he intended to harm Scott and Booze. He claims he only intended to scare Scott. We find this argument without merit. Buford was convicted of felonious assault

pursuant to R.C. 2903.11(A)(2), which provides, in part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon."

{¶24} Felonious assault requires that a person acts "knowingly." R.C. 2903.11(A)(2). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Whether a defendant acted "knowingly" must be inferred from the totality of the circumstances surrounding the alleged offense. *State v. Booth*, 133 Ohio App.3d 555, 562, 729 N.E.2d 406 (10th Dist. 1999). In its instructions to the jury, the trial court defined "cause" as "an act or failure to act which in a natural and continuous sequence directly produces physical harm to a person, and without which it would not have occurred." *See also* 4 Ohio Jury Instructions (2006) 64-65, Section 409.55.

{¶25} Scott testified that he was standing at LaToya's front door when he saw Buford standing "about seven yards away," pointing a gun at him. Scott turned and ran, and LaToya testified that Buford ran after Scott and started shooting. Booze, who was waiting in his car, began to drive away, but not before he saw Buford standing on the porch shooting in his direction. One of the bullets hit Booze's driver's side window and passed through, hitting the passenger door. Pieces of glass from the door hit Booze's face and the bullet was recovered from the inside of the car door. Both victims and Buford's sister all testified that Buford shot at Scott and Booze; Buford then threatened

his sister if she told anyone.

{¶26} Under the totality of the circumstances, we find that there was ample evidence for the jury to conclude that Buford was aware that his conduct of shooting a gun at the two victims would probably cause physical harm to them. Thus, Booze's convictions were not against the manifest weight of the evidence; therefore, they also were supported by sufficient evidence.

{¶27} The third and fourth assignments of error are overruled.

Sentencing

{¶28} In the first, fifth, and sixth assignments of error, Buford challenges his sentences in both cases. Buford contends that the trial court erred in sentencing him to consecutive sentences without engaging in the fact-finding required by R.C. 2929.14(C)(4).

{¶29} As an initial matter, the General Assembly recently amended former R.C. 2929.14(E)(4), renumbered R.C. 2929.14(C)(4), and enacted new language requiring fact-finding for consecutive sentences. Am.Sub.H.B. No. 86. Buford claims that R.C. 1.58 operates so as to entitle him to any reduction in penalty that H.B. 86 brought about because he was sentenced after it was signed into law. We disagree.

{¶30} R.C. 1.58(B) provides that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." Buford claims that R.C. 2929.14(C)(4) reduces the penalty because it

imposes limitations on consecutive sentences.

**{¶31}** But the court must look to the date legislation became effective, not to the date it was signed into law. H.B. 86 had an effective date of September 30, 2011, and Buford was sentenced in August 2011. It is well-settled that new sentencing guidelines for felony offenders do not apply to those persons already sentenced under prior law. *See State v. Banks*, 116 Ohio App.3d 659, 688 N.E.2d 1118 (3d Dist.1996). Therefore, the new sentencing guidelines are not applicable to the case at bar and we proceed to review Buford's sentence under the framework set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. In *Kalish*, the Supreme Court of Ohio articulated a two-step approach for appellate courts in reviewing felony sentences: "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Id.* at ¶ 4. The trial court has wide discretion to sentence an offender within the allowable statutory range permitted for a particular degree of offense. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100.

**{¶32}** In *Foster*, the Ohio Supreme Court declared the requirements imposed by R.C. 2929.14(C)(4) unconstitutional and held that "judicial fact-finding is not required before imposition of consecutive prison terms." *Id.* at ¶ 99. Thereafter, in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court

reiterated that R.C. 2929.14(C)(4) remained unconstitutional and imposed no fact-finding obligation on Ohio's trial courts. *Id.* at ¶ 39. This applies to both the consecutive sentences imposed in CR-541097 and to the court's running the sentence in CR-541097 consecutive to the sentence imposed in CR-541098.

{¶33} In light of the above, Buford's sentence was not contrary to law, the first prong under *Kalish*. Buford does not contend, under the second prong of *Kalish*, that his sentence was an abuse of discretion, and we do not find that it was. The record demonstrates that Buford has a lengthy criminal history.

{¶34} In light of these facts, we find that Buford's consecutive sentences were not contrary to law or an abuse of discretion. Accordingly, the first, fifth, and sixth assignments of error are overruled.

{¶35} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., JUDGE

PATRICIA A. BLACKMON, A.J., and
MELODY J. STEWART, J., CONCUR