[Cite as *State v. Sledge*, 2016-Ohio-4904.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-15-1109

    Appellee                               Trial Court No. CR0201401185

v.

Bryan Sledge                                   **DECISION AND JUDGMENT**

    Appellant                              Decided:  July 8, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Frank H. Spryszak, Assistant Prosecuting Attorney, for appellee.

Angelina Wagner, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, following a no contest plea, in which the trial court found appellant, Bryan Sledge,

guilty of two counts of gross sexual imposition and one count of rape and sentenced him

to serve a total of 17 years in prison.  For the following reasons, the trial court's judgment

is affirmed in part, and reversed in part.

**{¶ 2}** On February 6, 2014, a Lucas County Grand Jury indicted appellant on three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and (C), and two counts of rape, each with a specification that the alleged victims were under ten years of age, in violation of R.C. 2907.02(A)(1)(b) and (B). The charges stemmed from allegations that appellant sexually abused two of his girlfriend's daughters, A.H. and D.H., in 2012, when the children were seven and four years old, respectively. Appellant entered a not guilty plea to the charges on February 21, 2014.

**{¶ 3}** On August 11, 2014, appellee, the state of Ohio, filed a "Motion in Limine to Preclude Certain Testimony" pursuant to R.C. 2907.02(D), Ohio's rape shield law, in which it asked the trial court not to allow the defense to present testimony regarding any prior sexual abuse of A.H. and/or D.H. by an individual other than appellant.[1] Appellant filed a reply in opposition on September 9, 2015, in which he argued that evidence the state sought to preclude, i.e., allegations that the girls also were sexually abused by their biological father, is "highly relevant, probative, proper and not contrary to the intent of the Rape Shield Law" and is necessary for "[a] fair trial and Due Process of Law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1, [Sections 10 and 16]" of the Ohio Constitution. Appellant also argued that the information would assist the jury in assessing the credibility of the girls' testimony, and

---

[1] The record is vague as to whether one or both of the children made this accusation. However, since the legal analysis does not require a distinction, we will refer to both children herein.

2.

in determining whether their allegations could be based on sexual abuse committed by another individual.

{¶ 4} On December 10, 2014, the trial court granted the state's motion in limine. The state then offered to dismiss the charges against appellant if he passed a stipulated polygraph exam. Alternatively, if appellant did not pass the polygraph, the state offered him the options of either proceeding to trial or entering a revised plea of no contest to two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and (C), both third degree felonies, and one new count of rape without a specification as to the age of the victim, in violation of R.C. 2907.06(A)(2) and (B), a first degree felony. Appellant agreed to take the stipulated polygraph, which showed that appellant's answers were "deceptive."

{¶ 5} On December 22, 2014, appellant withdrew his not guilty plea at a hearing, and entered a revised plea of no contest to the amended charges. Pursuant to the terms of the plea, the state entered a nolle prosequi to one count of gross sexual imposition and the two counts of rape that were charged in the original indictment. Thereafter, appellant's defense attorney ("first attorney") stated that:

> part of the reason that [appellant] agreed to do the polygraph was in fact the
> Court's decision as far as the evidence that we could present at trial, etc.
> One of the reasons we're doing the no contest plea is to potentially preserve
> that as a potential issue for appeal * * *.

3.

{¶ 6} The trial court then engaged in a colloquy with appellant, in which it advised him as to the nature of the charges to which he was pleading guilty, and the effect of his guilty plea. Appellant was further advised of each of the constitutional rights that he was waiving by entering the plea, including the right to make the state prove his guilt beyond a reasonable doubt, to compel witnesses to testify on his behalf, and his "right of trial." The trial court also explained appellant's limited rights on appeal.

{¶ 7} After ascertaining that appellant understood his constitutional rights and was satisfied with his counsel's representation, the trial court told appellant that he would be designated a Tier III sex offender at sentencing, after which defense counsel stated that he had advised appellant of the Tier III registration requirements. The state then set forth the facts that would have been presented at trial. The trial court found that appellant's plea was knowingly, intelligently and voluntarily made, accepted his no contest plea and found him guilty of the amended charges. When appellant attempted to explain to the trial court that he was not guilty, the court stated that appellant could still choose to withdraw the plea and go to trial, an option which appellant rejected. The trial court then told him to write his thoughts down in a letter for the court's consideration, and the matter was continued for sentencing on January 28, 2015.

{¶ 8} On January 22, 2015, appellant, through new defense counsel, filed a motion to withdraw his plea, which the state opposed. In support of his motion, appellant asserted that it was made before sentencing and did not present a hardship to the state. Appellant also stated that he consistently had maintained his innocence even though he

entered the plea, and he was not aware that he would be required to register as a sex offender for the remainder of his life when the plea was made. In addition, appellant asserted that his first attorney and his mother put undue pressure on him to enter a plea at a time when he was emotionally vulnerable and "overwhelmed by the magnitude of the decision he was faced with." The state filed a memorandum in opposition on January 26, 2015.

{¶ 9} A plea withdrawal hearing was held on appellant's motion on March 4, 2015, at which testimony was presented by appellant, his first attorney, and appellant's mother, Deborah Sledge. Appellant testified that he was not "clear headed" when he entered the plea, and that his mother and his first attorney told him he would lose if the case went to trial. Appellant also testified that he tried to withdraw the plea "immediately" after it was made, when his head became clearer. Appellant admitted that he knew he would have to register as a sex offender for life as a result of the plea, and that the polygraph results showed he was "deceptive."

{¶ 10} Deborah Sledge testified that she spoke with appellant's first attorney the day of the plea hearing and that, based on the first attorney's statement that appellant could receive a life sentence if convicted by a jury, she urged appellant to enter the plea. Sledge said that her decision was based on her fear that she would never see her son again if the case went to trial.

{¶ 11} Appellant's first attorney testified that he was retained to represent appellant, and that he hired a private investigator and a "psychological expert" to work on

5.

the case. The first attorney stated that the trial court's granting of the motion in limine diminished appellant's chances of success at trial because it barred the testimony of several defense witnesses and limited the cross-examination of other witnesses. He said that he told appellant the court's decision had a "very negative impact as far as our ability to be successful in trial even though I felt we still could go to trial and be successful at trial."

{¶ 12} Appellant's first attorney denied encouraging appellant to take the plea deal because they would lose if the case went to trial. He further stated that he told appellant to enter a no contest plea because, in his opinion, it would have "preserved some issues on appeal, including the decisions that [the trial court] made on the initial motions." He also said that appellant agreed to take the polygraph "as a result of [the judge's] decision," however appellant expressed the desire to withdraw his plea "pretty much right away," at which point appellant's first attorney advised him to retain another attorney to file that motion. On cross-examination, appellant's first attorney admitted telling appellant that, as a result of the polygraph test, the trial would be more expensive and difficult to win.

{¶ 13} After the first attorney's testimony, counsel made closing arguments and the trial court took the matter under advisement. On April 2, 2015, the trial court issued an opinion and judgment entry in which it found that appellant's plea was entered after "extensive plea negotiations" and appellant was found guilty after "a lengthy plea colloquy with the Court" was held. After reviewing the law and the evidence, the trial

6.

court found that appellant was represented by a respected attorney whose competence was not in question, appellant understood the nature and consequences of his plea, and his desire to withdraw the no contest plea was based on nothing more than a "change of heart." Accordingly, the motion to withdraw the plea was denied. A sentencing hearing was held on April 3, 2015, after which the trial court sentenced appellant to serve a total of 17 years in prison. A timely notice of appeal was filed on April 23, 2015.

{¶ 14} On appeal, appellant sets forth the following two assignments of error:

1. The trial court erred to the prejudice of appellant by denying his presentence motion to withdraw his plea.

2. The trial court erred to the prejudice of appellant by limiting his ability to cross-examine his accusers regarding allegations of sexual abuse by another person, thereby denying him the right to confront and cross-examine witnesses afforded by the sixth amendment of the United States Constitution and the Ohio Constitution.

For the sake of clarity, we will consider appellant's assignments of error in reverse order.

{¶ 15} In support of his second assignment of error, appellant asserts that the trial court abused its discretion and violated his constitutional right to confront his accusers when it prevented him from presenting evidence to show that A.H. and D.H. also accused their biological father of sexual abuse. In support, appellant argues that the trial court improperly relied on R.C. 2907.02(D), also known as Ohio's rape shield law, when it excluded all evidence that his "child accusers" were sexually abused in the past, and it

denied him the chance to use that evidence to explain their "extraordinary sexual knowledge" at a young age. Appellant further argues that, even if the rape shield law can be applied in this instance, the evidence should be allowed because it is relevant and material to his defense theory that the children were "transferring" memories of abuse by their father onto appellant with the encouragement of their mother, appellant's ex-girlfriend, and the court's refusal to allow him to confront his accusers violated his constitutional rights.

{¶ 16} R.C. 2907.02(D) states, in relevant part, that:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. * * *

{¶ 17} Previously, this court has held that Ohio's rape shield law bars an accused from introducing evidence at trial to show that the complainant-child accused someone else of sexual abuse in the past. *See State v. Coffey*, 6th Dist. Lucas No. L-12-1047, 2013-Ohio-3555, ¶ 25, *State v. Shively*, 6th Dist. Lucas No. L-87-412, 1989 WL 52910 (May 19, 1989), *State v. Toda*, 6th Dist. Wood No. WD-86-069, 1987 WL 165134

8.

(Sept. 4, 1987). However, other Ohio courts have analyzed the issue and reached differing conclusions.

{¶ 18} In *In re Michael*, 119 Ohio App.3d 112, 694 N.E.2d 538 (2d Dist.1997), the Second District Court of Appeals held that that exclusion of all prior allegations of sexual abuse brought by the victim against the defendant in that case would be "unreasonable." Nevertheless, the appellate court upheld the exclusion because an expert witness testified at trial about the abuse. In *State v. Stoffer*, 7th Dist. No. 09-CO-1, 2011-Ohio-5133, the Seventh District Court of Appeals held that the intent of the rape shield law is to prevent reference to "specific instances" of a complainant's own "volitional sexual activity with another," and not to screen out evidence of "involuntary activity such as that which would stem from being subjected to sexual abuse." *Id.* at ¶ 94. Accordingly, the *Stoffer* court disagreed with *Michael* "to the extent that it stands for the proposition that the rape shield law has any application to prior sexual abuse suffered by a child victim." *Id.*

{¶ 19} In this case, the complainants are children of tender years. It is undisputed that at least one of the children also accused her biological father of sexual abuse. On consideration, we agree with the *Stoffer* court that the alleged prior abuse in this case did not result from volitional sexual acts, and therefore it may not fall within the general prohibition mandated by R.C. 2907.02(D). However, this conclusion alone is not dispositive of the issue raised in this appeal.

{¶ 20} Appellant's second assignment of error challenges the trial court's granting of a motion in limine that was made by the state to exclude evidence pursuant to R.C. 2907.02(D). It is well-settled that such a motion "is usually made before or after the beginning of a jury trial * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial." *State v. Grubb,* 28 Ohio St.3d 199, 200, 503 N.E.2d 142 (1986). If the matter continues to trial, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context * * *. Finality does not attach when the motion is granted." *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991), citing *Grubb, supra*. In contrast, a motion to suppress is a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation [of a constitutional right]." *State v. French,* 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995).

{¶ 21} While a motion to suppress is immediately final and appealable, a motion in limine that is not the functional equivalent of a motion to suppress is not a final, appealable order. *State v. Lemmon*, 9th Dist. Wayne No. 2531, 1990 WL 72357 (May 23, 1990), citing *State v. Davidson*, 17 Ohio St. 132, 477 N.E.2d 1141 (1985). Consequently, in cases where "a litigant receives an adverse ruling on a motion in limine, it is that person's obligation to renew the objection at trial to preserve the issue for appeal." *State v. Oshodin,* 6th Dist. Lucas No. L-03-1169, 2004-Ohio-1186, ¶ 5. Where the defendant enters a no contest plea after an adverse ruling on a motion in limine, and nothing in the

10.

record indicates that the right to appeal the ruling was otherwise preserved, it is waived. *Id.* at ¶ 6.

{¶ 22} In this instance, the motion in question was made at the state's request, with the purpose of excluding evidence that was potentially helpful to the defense, not the prosecution. The trial court's preliminary decision might not have resulted in the complete elimination of evidence of prior sexual abuse from the consideration of a jury in the context of a trial. *See In re Michael* and *State v. Stoffer, supra*. Therefore, we find that the motion in limine in this case was not the functional equivalent of a motion to suppress. In addition, although appellant's first attorney testified as to why he advised appellant to enter the plea, he did not specifically attempt to preserve an objection to the trial court's ruling for appeal. Therefore, there remains nothing to appeal, and appellant's second assignment of error is therefore not well-taken.

{¶ 23} In his first assignment of error, appellant asserts that the trial court abused its discretion when it denied the motion to withdraw his no contest plea. In support, appellant argues that a pre-sentence motion to withdraw a plea should be freely and liberally granted, especially where the motion was made a week before sentencing, the state would not be prejudiced by the granting of the motion, appellant has consistently maintained his innocence throughout the proceedings, and the no contest plea was made under intense pressure from appellant's mother and his first attorney.

{¶ 24} Generally, when a defendant enters a no contest plea, the plea must be knowingly, voluntarily and intelligently made. *State v. Engle,* 74 Ohio St.3d 525, 527,

11.

660 N.E.2d 450 (1996). The test for whether enforcement would render a particular plea unconstitutional on that basis is whether the defendant can show a prejudicial effect, i.e., "'whether the plea would have otherwise been made.'" *State v. Mitchell,* 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶ 13, quoting *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 25} This court previously has held that "[w]hen a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently." *State v. Sheeks,* 6th Dist. Wood No. WD-09-031, 2010-Ohio-94, ¶ 16, citing *State v. Mitchell*, *supra*, at ¶ 15. (Other citation omitted.) However, an erroneous representation by counsel does not invalidate a plea unless the record contains evidence that, but for the error, the appellant would have pled differently. *Id.*

{¶ 26} The record shows that, in spite of his claim of innocence, appellant agreed to take the polygraph examination and later enter a no contest plea because he was advised that he could challenge the trial court's preliminary evidentiary rulings on appeal. However, as set forth above, appellant waived his right to such a challenge as a matter of law.

{¶ 27} On consideration of the foregoing, including our determinations as to appellant's second assignment of error, we find that the record contains sufficient evidence to demonstrate that appellant's plea was not knowingly, voluntarily and

12.

intelligently made.  Appellant's first assignment of error is, therefore, well-taken, although on a different basis than the one argued on appeal.

{¶ 28} The judgment of the Lucas County Court of Common Pleas is hereby affirmed in part and reversed in part.  Appellant's no contest plea is hereby vacated and the case is remanded to the trial court for further proceedings consistent with the decision.  Pursuant to App.R. 24, court costs are assessed to appellee, the state of Ohio.

Judgment affirmed in part<br>
and reversed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

Thomas J. Osowik, J. _____

Stephen A. Yarbrough, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.