[Cite as *State v. Jeffries*, 2018-Ohio-162.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 105379

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CEDRIC N. JEFFRIES

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; REVERSED IN PART
## AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-606245-A

**BEFORE:** Keough, P.J., Laster Mays, J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEY FOR APPELLANT**

Eric M. Levy
55 Public Square, Suite 1600
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Jeffrey Schnatter
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** Defendant-appellant, Cedric Jeffries ("Jeffries"), appeals from the trial court's judgment finding him guilty of rape and kidnapping and sentencing him to 15 years to life in prison. For the reasons that follow, we affirm in part; reverse in part; and remand for a hearing regarding the imposition of court costs.

## I. Background

**{¶2}** Jeffries was charged in a four-count indictment as follows: Count 1, rape in violation of R.C. 2907.02(A)(1)(b); Count 2, kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification; Count 3, rape in violation of R.C. 2907.02(A)(2); and Count 4, kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification. Counts 1 and 2 related to an incident that occurred on December 23, 2011, the victim's twelfth birthday, and Counts 3 and 4 related to an incident that occurred in March 2016, when the victim was 16 years old.[1] Jeffries pleaded not guilty and the case proceeded to a jury trial.

**{¶3}** The evidence adduced at trial demonstrated that Jeffries and R.S., the victim's mother, had an on and off relationship for several years. During those years, R.S. had one child with Jeffries and two children with other men, including D.S., the

---

[1]Counts 1 and 2 of the indictment originally charged that the offenses occurred on December 23, 2012. Both the prosecutor and defense counsel agreed on the record that the correct date of the alleged offense was December 23, 2011, and informed the trial court that the indictment should be so amended. Although the trial court never journalized the amendment, it is clear that Counts 1 and 2 were tried with the amended date. Jeffries does not raise any argument on appeal that he was prejudiced by the amendment.

victim in this case. R.S. eventually lost custody of the children, and they went to foster care.

{¶4} D.S. testified that she lived in three different foster homes before she was six years old, when she went to live with H.G., Jeffries's mother, who had obtained custody of R.S.'s three children. Jeffries also lived in the home. D.S. was not Jeffries's biological child but she testified that she considered him to be her father and called him "Dad."

{¶5} D.S. testified that about a year after she moved in, Jeffries began touching her inappropriately. She said the first incident she remembered was when Jeffries lay on his back on the couch, placed her on his stomach, placed his hand on her buttocks, and then moved his hand around. Both D.S. and Jeffries were clothed during this incident.

{¶6} D.S. testified that the inappropriate touching continued as she grew older. She recalled an incident when she was about nine years old when Jeffries came into the living room while she was watching television and forced her to take her clothes off and sit on his lap on the couch. She testified that there were other incidents where Jeffries would force her to take her clothes off and sit on his lap; she said that sometimes he was dressed during these incidents but at other times he would have his pants down. She said that during these incidents, Jeffries would touch her buttocks, breasts, and vagina. D.S. testified that the incidents occurred when H.G. left the house on the weekends or after her brothers were in bed.

{¶7} D.S. testified that on December 23, 2011, her twelfth birthday, Jeffries instructed her to take her clothes off and lay on the couch. She said that Jeffries, who was undressed, laid on top of her and after touching her vagina, inserted his fingers and then his penis into her vagina. D.S. testified that she did not feel like she could leave or get away from Jeffries during this incident.

{¶8} D.S. testified that this type of sexual activity continued for "years." She said that she never told anyone about the abuse because she was afraid that no one would believe her, or she would be sent back to foster care.

{¶9} In March 2016, when she was sixteen years old, D.S. finally told Jacqueline Bell, the principal at her high school, about the abuse because she "was just tired of it." D.S. testified that one or two weeks before she told Ms. Bell, Jeffries came into her bedroom one night as she was sleeping. She said she was sleeping on her stomach, dressed in pajama pants, underwear, and a tee-shirt, when she awoke to Jeffries lying on top of her. D.S. testified that Jeffries pulled her pajama pants and underwear down, and then pulled his own pants off. She said that he then got back on top of her and put his penis in her vagina. She testified that during this incident, she did not feel like she could leave and had no choice but to stay.

{¶10} After Jeffries left her room, D.S. decided to run away. She packed two bags and left home at approximately 11 p.m. D.S. said she took Jeffries's cell phone with her because he had hidden her phone.

{¶11} During the hours after D.S. ran away, Jeffries called her over 30 times but D.S. did not answer. He also texted her at approximately 10:30 a.m. the following morning, telling her "police on way" and asking her to "don't tell on me."

{¶12} After she ran away, D.S. walked to her high school and when it opened at 7 a.m., told Bell about the abuse. Bell called Cuyahoga County Department of Children and Family Services ("CCDCFS"), and CCDCFS social worker Shannon Sneed responded to the school and interviewed D.S. The police were called, and Jeffries was eventually arrested.

{¶13} At trial, Jeffries denied that he ever sexually abused D.S. He admitted sending a text to her the morning after she ran away, but said that he texted "police on way" only because he did not want D.S. to be scared when the police arrived at her school. He also said he intended to text "just talk to me" but the old cell phone he was using somehow changed his text to "don't tell on me."

{¶14} The jury found Jeffries guilty of all counts. The prosecutor and defense counsel agreed that for purposes of sentencing, Counts 1 and 2 merged and Counts 3 and 4 merged. The state elected to proceed to sentencing on Counts 2 and 3. The trial court sentenced Jeffries to life in prison on Count 2, with parole eligibility after 15 years, to run concurrent to 10 years incarceration on Count 3. The court also imposed court costs. This appeal followed.

## II. Law and Analysis

**A.      Evidence of Victim's Prior Allegations of Nonconsensual Sexual Abuse Precluded From Trial**

{¶15} Prior to trial, the trial court held an in camera hearing pursuant to *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 318 (1992), to determine the admissibility at trial of evidence regarding D.S.'s prior allegations of sexual misconduct against a foster brother.   At the hearing, D.S. testified that when she was in a foster home at age four or five, one of her foster brothers sexually abused her, including putting his penis in her vagina.   She said that the activity was not consensual, and that she honestly disclosed the abuse to a CCDCFS social worker.   The trial court then denied Jeffries's request to allow defense counsel to ask questions of D.S. regarding these prior allegations of sexual abuse by the foster brother, concluding that cross-examination on this issue was precluded by Ohio's rape shield statute.   In his first assignment of error, Jeffries contends that the trial court erred in denying his request because it violated his Sixth Amendment right to confront the witnesses against him.

{¶16} R.C. 2907.02(D), Ohio's rape shield statute, states, in relevant part, that:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶17} Jeffries cites to *State v. Stoffer*, 7th Dist. Columbia No. 09-CO-1, 2011-Ohio-5133, in which the Seventh District found that the rape shield statute address

only prior *consensual* sexual activity of the victim and not prior sexual abuse suffered by the victim. *Id.* at ¶ 98. Thus, in *Stoffer*, although it ultimately found the error to be harmless, the Seventh District held that the trial court erred in applying the rape shield statute to preclude the defendant from introducing evidence that the victim had previously been sexually abused by someone other than the defendant. In *State v. Sledge*, 6th Dist. Lucas No. L-15-1109, 2016-Ohio-4904, the Sixth District, citing *Stoffer*, found that where alleged prior sexual abuse of the victim does not result from "volitional sexual acts * * * it may not fall within the general prohibition mandated by R.C. 2907.02(D)." *Id.* at ¶ 19. In reliance on *Stoffer* and *Sledge*, Jeffries asserts that the rape shield statute did not preclude his cross-examination of D.S. regarding her prior allegations of sexual abuse against a foster brother. We disagree because the Ohio Supreme Court has made it clear that both prior nonconsensual and consensual sexual activity of the victim are protected by the rape shield statute.

{¶18} In *Boggs*, supra, the Ohio Supreme Court considered whether the rape shield statute prohibits a defendant from cross-examining an alleged rape victim about prior false rape allegations. The court held that before cross-examination of a rape victim regarding prior false rape accusations may proceed, "the trial judge shall hold an in camera hearing to ascertain whether such testimony involves sexual activity and thus is inadmissible under R.C. 2907.02(D), or is totally unfounded and admissible for impeachment of the victim." *Boggs*, 63 Ohio St. at 424, 588 N.E.2d 318.

**{¶19}** The Supreme Court also held that the burden is on the defendant to demonstrate that the accusations were false. The court stated:

> the initial inquiry must be whether the accusations were actually made by the prosecutrix. Moreover, the trial court must also be satisfied that the prior allegations of sexual misconduct were actually false or fabricated. That is, the trial court must ascertain whether *any sexual activity took place, i.e., an actual rape or consensual sex. If it is established that either type of activity took place, the rape shield statute prohibits any further inquiry into this area.* Only if it is determined that the prior accusations were false because no sexual activity took place would the rape shield law not bar further cross-examination.

(Emphasis added.) *Id.* at 423. In short, if any type of sexual activity occurred and the allegation was not false, the victim is protected by the rape shield statute, and the defendant may not question the victim about the prior sexual activity.

**{¶20}** Here, the trial court conducted an in camera hearing at which it learned that the incident involving D.S.'s foster brother had occurred one or two years before she moved in with H.G. and Jeffries. D.S. never wavered from her claims that the incident occurred, and that she honestly reported it to CCDCFS. After hearing from D.C., the trial court decided that the incident was protected by the rape shield statute because it involved sexual activity, and there was no evidence whatsoever that the allegation was false. On this record and in light of *Boggs*, we find no abuse of discretion in the trial court's ruling. The first assignment of error is therefore overruled.

**B.    Other Acts Evidence**

**{¶21}** In his second assignment of error, Jeffries contends that the trial court erred by admitting evidence of his prior bad acts; specifically, in allowing D.S. to testify about

prior instances of sexual abuse against her other than the two incidents for which he was indicted. Jeffries contends this evidence was "classic bad-man evidence" that was unrelated to the two incidents for which he was indicted and allowed the jury to convict him on the charged offenses merely because it assumed that he acted in conformity with his bad character.

{¶22} Defense counsel did not object to the admission of this evidence at trial and therefore has waived all but plain error on appeal. *State v. Jones*, 91 Ohio St.3d 335, 343, 744 N.E.2d 1163 (2001); *State v. Tibbs*, 8th Dist. Cuyahoga No. 89723, 2008-Ohio-1258, ¶ 9. Plain error exists where, but for the error, the outcome of the trial clearly would have been different. *Tibbs* at *id*. Appellate courts find plain error only in exceptional cases where it is necessary to prevent a manifest miscarriage of justice. *Id.*

{¶23} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose it to show the accused's propensity or inclination to commit crime, or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. However, there are exceptions that allow other acts of wrongdoing to be admitted.

{¶24} First, R.C. 2945.59 provides that:

[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶25}** Also, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident.

**{¶26}** In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278 at ¶ 20.

**{¶27}** Applying this test to the challenged testimony, we find no abuse of discretion by the trial court in admitting the evidence. First, the other acts evidence was relevant because it tended to show Jeffries's plan for grooming D.S. for sexual activity. "'Shaping and grooming describes the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse.'" *Id.* at ¶ 21, quoting *United States v. Johnson*, 132 F.3d 1279, 1280, fn. 2 (9th Cir.1997). D.S.'s testimony established that the grooming started at six years of age when Jeffries held her and touched her buttocks; progressed through the years to Jeffries having her take her

clothes off and sit naked on his lap; escalated to Jeffries touching her breasts and vagina; and finally, culminated in incidents when Jeffries would insert his penis in D.S.'s vagina.

{¶28} Next, the testimony was elicited for a legitimate purpose under Evid.R. 404(B), which provides that other acts evidence may be admitted to show motive, intent, plan, scheme and absence of mistake. D.S.'s testimony was relevant to Jeffries's plan and scheme to groom her over the years from touching to sexual intercourse.

{¶29} And the probative value of the evidence was not outweighed by the danger of unfair prejudice. Rather than inflaming the jury and appealing only to its emotions (the general test for unfairly prejudicial evidence), the evidence of Jeffries's grooming of D.S. provided a basis for the jury to recognize his ongoing scheme for sexual activity with D.S. And although the trial court did not give a limiting instruction regarding the other acts evidence, D.S. was subject to cross-examination, and defense counsel challenged her credibility and testimony regarding Jeffries's sexual motives and actions. Likewise, Jeffries testified in his own defense that D.S. was lying. The jury was free to judge the credibility of the witnesses.

{¶30} Finally, Jeffries did not request that the trial court give a limiting instruction regarding the other acts evidence. His failure to do so waives all but plain error. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 136. Where the defense fails to request a limiting instruction on other acts evidence, the trial court's failure to give such an instruction is not plain error where nothing suggests the jury used other acts evidence to convict the defendant because he was a bad person. *Id.* Jeffries

points to nothing that suggests the jury did so. Accordingly, we find no plain error in the trial court's failure to give a limiting instruction and in admitting the other acts evidence.

{¶31} The second assignment of error is therefore overruled.

## C. Jury Instruction — Kidnapping

{¶32} Under R.C. 2905.01(C)(3)(a), if the victim of a kidnapping was under 13 years of age and the offender is also convicted of a sexual motivation specification, as Jeffries was, kidnapping is a felony of the first degree, and the offender shall be sentenced to an indefinite term of 15 years to life in prison. If, however, the victim was released in a safe place unharmed, the offender shall be sentenced to an indefinite term of 10 years to life in prison.

{¶33} In his third assignment of error, Jeffries contends that he was deprived of his Sixth Amendment right to trial by jury because the trial court did not instruct the jury with respect to Count 2 that it should make a determination as to whether D.S. was released in a safe place unharmed. He argues that the "released in a safe place unharmed" provision of R.C. 2905.01(C)(3)(a) is a factual sentencing determination that the finder of fact is required to make because it controls which of the two sentencing terms the trial court is required to impose. He asserts that the trial court therefore erred in not instructing the jury to make this determination. Jeffries did not request such a jury instruction, however, and has waived all but plain error, which we do not find.

{¶34} This court considered and rejected a similar argument in *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169. In *Bolton*, the defendant argued that he was

denied due process because the trial court did not instruct the jury to determine whether the victim was released in a safe place unharmed, a factor that would have reduced the kidnapping offense in that case from a felony of the first degree to a second-degree felony. We found that the "released in a safe place unharmed" provision of R.C. 2905.01(C) is not an element of the offense of kidnapping; instead the defendant "must plead and prove that assertion as an affirmative defense." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 233. *See also State v. Singleton*, 8th Dist. Cuyahoga No. 103478, 2016-Ohio-4696, ¶ 35.

{¶35} We also found that "'the court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury.'" *Bolton* at ¶ 56, quoting *State v. Ogletree*, 8th Dist. Cuyahoga No. 79882, 2002-Ohio-4070, ¶ 14. Because the appellant had failed to provide any evidence that the victim was released unharmed, we held that the trial court did not err by not giving a jury instruction on the "released in a safe place unharmed" issue. *Bolton* at *id*.

{¶36} In this case, as in *Bolton*, Jeffries never argued that D.S. was released unharmed nor did he provide any evidence that she was released unharmed. Instead, ample evidence provided by the state demonstrated that D.S. was indeed harmed — she was raped by Jeffries before she was released. Further, she was referred for psychological counseling after the abuse was discovered.[2] As this court stated in *Bolton*,

---

[2] For purposes of R.C. 2905.01, "harm" includes both physical and psychological harm. *State v. Mohamed*, Slip Opinion No. 2017-Ohio-7468, ¶ 14.

"'it is difficult indeed to imagine that one may engage in sexual activity with another against their will and still argue that such a person is left 'unharmed.'" *Id.*, quoting *State v. Arias*, 9th Dist. Lorain No. 04CA008428, 2004-Ohio-4443, ¶ 38. Because there was no evidence that D.S. was released unharmed, the trial court did not err in not instructing the jury on this issue. The third assignment of error is overruled.

**D.    Ineffective Assistance of Counsel**

{¶37} Jeffries next argues that his counsel was ineffective for not (1) objecting to the admission of other acts evidence; (2) objecting to the lack of a "released in a safe place unharmed" jury instruction; and (3) filing an affidavit of indigency and asking the court to waive the imposition of court costs at sentencing.

{¶38} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶39} Having found no error in the admission of other acts evidence, we find no ineffective assistance in counsel's failure to object to this evidence. Likewise, having found no error in the trial court's failure to give a "released in a safe place unharmed"

jury instruction regarding kidnapping, we find no ineffective assistance in counsel's failure to object to the lack of such an instruction.

{¶40} With respect to counsel's failure to move the court to waive court costs, we note that R.C. 2947.23(A)(1) governs the imposition of court costs and provides that "[i]n all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." The statute does not prohibit a court from assessing costs against an indigent defendant; rather "it requires a court to assess costs against all convicted defendants." *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8; *State v. Brown*, 8th Dist. Cuyahoga No. 103427, 2016-Ohio-1546, ¶ 12. Thus, a sentencing court must include the costs of prosecution in the sentence and render a judgment for costs against the defendant even if the defendant is indigent. *White* at *id*.

{¶41} In its discretion, however, a trial court may waive court costs upon a defendant's motion if the defendant is indigent. R.C. 2949.092; *State v. Walker*, 8th Dist. Cuyahoga No. 101213, 2014-Ohio-4841, ¶ 9. To demonstrate prejudice regarding counsel's failure to move for the waiver of court costs to satisfy his ineffective assistance of counsel claim, Jeffries must show that a reasonable probability exists that the trial court would have waived payment of the costs if such motion had been filed. *State v. Graves*, 8th Dist. Cuyahoga No. 103984, 2016-Ohio-7303, ¶ 13, citing *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2012-Ohio-2762, ¶ 78; *State v. Bonton*, 8th Dist. Cuyahoga No. 102918, 2016-Ohio-700, ¶ 20.

**{¶42}** In *State v. Gibson*, 8th Dist. Cuyahoga No. 104368, 2017-Ohio-102, this court held that a prior finding by a trial court that a defendant was indigent demonstrated a reasonable probability that the trial court would have waived costs had counsel made a timely motion. *Id.* at ¶ 16. The court found that under such circumstances, counsel's failure to move for waiver of costs was deficient and prejudiced the defendant. This court applied *Gibson* recently in *State v. Springer*, 8th Dist. Cuyahoga No. 104649, 2017-Ohio-8861.

**{¶43}** In this case, as in *Gibson* and *Springer*, the trial court found Jeffries to be indigent and appointed counsel for him. Under such circumstances, counsel's failure to move for a waiver of costs was deficient and prejudiced Jeffries. Accordingly, we vacate the costs and remand for a hearing regarding the imposition of costs. The fourth assignment of error is sustained in part.

**E.    Insufficient Evidence and Manifest Weight of the Evidence**

**{¶44}** In his fifth assignment of error, Jeffries contends there was insufficient evidence to support his convictions for rape and kidnapping. In his sixth assignment of error, he asserts that his convictions are against the manifest weight of the evidence.

**{¶45}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶46}** A manifest weight challenge, on the other hand, questions whether the state met its burden of persuasion. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 32. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 388.

**{¶47}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight given to the evidence are primarily matters for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances where the evidence presented at trial weighs heavily against the conviction. *Thompkins* at 388.

**{¶48}** Although the concepts of the sufficiency of the evidence and weight of the evidence are different, a determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Buford*, 8th Dist. Cuyahoga Nos. 97218 and 97529, 2012-Ohio-1948, ¶ 20.

**{¶49}** Jeffries first challenges his conviction on Count 2, kidnapping in violation of R.C. 2905.01(A)(4), which provides that "no person, by force, threat, or deception, or in the case of a victim under the age of thirteen, by any means, shall * * * restrain the liberty of the other person * * * to engage in sexual activity * * * with the victim against the victim's will."

**{¶50}** Jeffries contends that his kidnapping conviction was against the manifest weight of the evidence and not supported by sufficient evidence because there was no evidence that D.S. was required to submit by physical force or the threat of physical force, that she ever rejected his advances or told him to stop, or that she was unable to get away. Thus, he asserts there was no evidence that she was restrained of her liberty.

**{¶51}** But D.S. testified that Jeffries laid on top of her when he raped her on her twelfth birthday. She testified further that she did not feel like she could leave or get away from Jeffries during this incident. This testimony is more than sufficient to demonstrate that Jeffries physically restrained D.S.'s liberty while he raped her.

**{¶52}** In any event, R.C. 2905.01(A)(4) does not require that the state demonstrate that the defendant used physical force to restrain the liberty of a child under the age of 13.

Rather, the statute provides that the state need only show that the child's liberty was restrained "by any means."

{¶53} The Ohio Supreme Court has recognized that "[t]he youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988). Likewise, this court has specifically held in relation to kidnapping that "'a child's liberty may be restrained through the inherent social/psychological pressures that accompany'" an adult-child familial relationship. *State v. Zimmer*, 8th Dist. Cuyahoga No. 104946, 2017-Ohio-4440, ¶ 15, quoting *State v. Weems*, 8th Dist. Cuyahoga No. 102954, 2016-Ohio-701, ¶ 25. *See also State v. Diaz*, 2016-Ohio-5523, 69 N.E.3d 1182 (8th Dist.).

{¶54} Even assuming for argument's sake that Jeffries did not physically threaten D.S. with respect to the rape on her twelfth birthday, she testified that she was fearful she would be sent back to foster care if she refused Jeffries's advances. This testimony, coupled with D.S.'s age, her testimony that she considered Jeffries to be her father and called him "Dad," and Jeffries's acknowledgment that he considered D.S. to be his child and that he helped care for and discipline her, proved that Jeffries restrained D.S.'s liberty by psychological pressure inherent in his position as D.S.'s "father." Accordingly, his conviction for kidnapping is supported by sufficient evidence and not against the manifest weight of the evidence.

{¶55} Jeffries also contends that his conviction on Count 3, rape in violation of R.C. 2907.02(A)(2), was not supported by sufficient evidence and is against the manifest weight of the evidence. Under R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." For the same reasons argued with respect to his kidnapping conviction, Jeffries contends that there was no evidence that he compelled D.S. to submit by force or threat of force with respect to the rape.

{¶56} We disagree. The evidence demonstrated that D.S. awoke to find Jeffries on top of her, and that he then pulled her pajama pants and underwear off and inserted his penis in her vagina. D.S. testified that during this incident, she did not feel like she could leave and had no choice but to stay. We find this evidence sufficient to establish that Jeffries used physical force to rape D.S. And as discussed above, Jeffries's position as a father-figure to D.S. restrained her liberty through the psychological pressure he exerted as her "Dad." And despite Jeffries's argument otherwise, there is no requirement that to find the element of force, a rape victim must tell her rapist that she does not want the rape to happen.

{¶57} The jury did not lose its way in convicting Jeffries of kidnapping and rape, nor is this the exceptional case where the evidence weighs heavily against the convictions. The fifth and sixth assignments of error are overruled.

**F.      Testimony of a Witness Stricken**

{¶58} During trial, D.S. testified that once when she was sitting on Jeffries's lap while naked, C.J., one of Jeffries's sons, walked into the living room and saw her and Jeffries. Before trial, C.J. told a social worker that he had seen Jeffries and D.S. in the living room engaged in sexual activity. However, when the state called C.J. to the stand, he gave nonresponsive testimony as to whether he had ever seen Jeffries and D.S. together. He also testified that he did not remember telling a social worker about an occasion when he came downstairs, even though Jeffries had told him not to, and saw Jeffries and D.S. engaged in sexual activity.

{¶59} The trial court struck C.J.'s testimony, finding that his testimony provided no relevant information. The trial court also found that although the state was surprised by C.J.'s testimony, it did not amount to affirmative damage to the state's case because the incident allegedly observed by C.J. did not occur on either December 23, 2011 or in March 2016, the dates charged in the indictment. Accordingly, the trial court held that under Evid.R. 607, the state was precluded from bringing out any prior inconsistent statements by C.J. Defense counsel did not object to the trial court's ruling, telling the court that she was not going to ask any questions of C.J. anyway.

{¶60} Evid.R. 607(A) prevents a party from impeaching its own witness unless the party is surprised by the testimony and the testimony is damaging. Jeffries agrees with the trial court's analysis that C.J.'s testimony, although a surprise to the state, was not damaging to the state's case because it was not connected to the two incidents charged in

the indictment. Thus, he asserts that the trial court properly ruled that the state could not question C.J. regarding his prior inconsistent statements.

{¶61} Nevertheless, in his seventh assignment of error, Jeffries argues that the trial court erred in striking C.J.'s testimony because it directly refuted D.S.'s testimony that C.J. had seen her and Jeffries together and, thus, was relevant to D.S.'s credibility. Because Jeffries did not object to the trial court's ruling striking C.J.'s testimony, he has waived all but plain error, which again we do not find.

{¶62} Our review of the record demonstrates that C.J.'s testimony did not refute D.S.'s testimony that C.J. had once seen her and Jeffries engaging in sexual activity. The record reflects that when he was asked if he remembered ever seeing his father and D.S. together, C.J. first replied, "no, not really," and then when asked what he meant by "not really," said, "no, I mean, I mean, all — used to, I mean —," and then "I mean, all of us." When asked if he remembered a time when he wanted to go downstairs but Jeffries told him he could not, C.J. replied "no." Finally, when he was asked if he remembered telling a social worker about that incident, C.J. said he could not remember.

{¶63} We find no plain error in the trial court's judgment to exclude this testimony. Because C.J.'s testimony was nonresponsive, it did not refute D.S.'s testimony that C.J. had once seen her and Jeffries together and thus was not relevant to her credibility.

{¶64} Jeffries also contends that his counsel was ineffective for not objecting to the trial court's ruling excluding C.J.'s testimony. We disagree. In evaluating a claim

of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Furthermore, trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶65}** Here, counsel's failure to object to the trial court's ruling was clearly a strategic decision. Had the trial court allowed C.J.'s testimony, the state would have used his prior statements to the social worker to impeach him, testimony that clearly would have been detrimental to Jeffries's defense that he never sexually abused D.S. In fact, counsel told the court she had not planned to ask C.J. any questions, presumably to avoid opening the door to any damaging testimony. It is apparent that counsel's decision not to object to the court's ruling was a matter of trial strategy to which we must afford great deference. Accordingly, we find no ineffective assistance of counsel, and the seventh assignment of error is overruled.

**{¶66}** Judgment affirmed in part; reversed in part; and remanded for a hearing regarding the imposition of court costs.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for a hearing on costs and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
LARRY A. JONES, SR., J., CONCUR