[Cite as *State v. Thomas*, 2018-Ohio-4345.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27362 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-718 |
| | : | |
| GARY L. THOMAS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of October, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Gary L. Thomas, appeals from his conviction in the Montgomery County Court of Common Pleas after a jury found him guilty of two counts of rape of a person under the age of 13 and four counts of gross sexual imposition of a person under the age of 13. In support of his appeal, Thomas contends his conviction was against the manifest weight of the evidence. Thomas also contends the trial court abused its discretion in admitting evidence of other wrongs or bad acts in violation of Evid.R. 404(B) and that the State engaged in prejudicial misconduct during its closing argument. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On May 12, 2016, the Montgomery County Grand Jury returned a six-count indictment charging Thomas with three counts of rape of a person under the age of 13 in violation of R.C. 2907.02(A)(1)(b) and three counts of gross sexual imposition of a person under the age of 13 in violation of R.C. 2907.05(A)(4). The charges stemmed from allegations that Thomas sexually abused his niece, T.K., on multiple occasions between September 2008 and December 2013, when T.K. was between 6 and 11 years old. Thomas pled not guilty to the charges and the matter proceeded to a jury trial beginning on November 14, 2016.

{¶ 3} At trial, T.K.'s legal guardian, V.T., to whom T.K. referred as "mom," testified that between 2009 and 2011, she and T.K. resided on Rittenhouse Drive in Huber Heights, Montgomery County, Ohio, with V.T.'s boyfriend and his two granddaughters. V.T. testified that T.K. was in the first grade when they moved to the Rittenhouse

residence in 2009. V.T. testified that she rented the Rittenhouse residence from her sister's husband, Thomas, who was considered T.K.'s uncle. V.T. testified that while she and T.K. lived at the Rittenhouse residence, her sister and Thomas resided on Larchview Drive in Huber Heights.

{¶ 4} V.T. testified that in August 2011, when T.K. was 9 years old, she and T.K. moved out of the Rittenhouse residence and began living in Dayton. V.T. testified that they moved because Thomas and her sister sold the Larchview residence and moved into the Rittenhouse residence.

{¶ 5} T.K., who had just turned 14 years old at the time of trial, testified that she would at times visit Thomas and her aunt by herself at both the Larchview and Rittenhouse residences. T.K. testified to three specific incidents of sexual abuse while she visited Thomas at the Larchview residence and three specific incidents of sexual abuse while she visited Thomas at the Rittenhouse residence. The record indicates T.K. was between 6 and 9 years old when Thomas resided at Larchview and between 9 and 11 years old when the abuse occurred at Rittenhouse.

{¶ 6} T.K. testified that at the Larchview residence, she recalled an incident when Thomas put his fingers inside her vagina while she was sitting on Thomas's lap watching him at his computer. T.K. recalled that it felt weird and hurt her. T.K. further testified that she did not remember what exactly Thomas was doing on his computer when the incident happened.

{¶ 7} During a second incident at Larchview, T.K. testified that Thomas pulled his penis out of his pants and made her rub his penis with her hand while they were in Thomas's bedroom. During a third incident at Larchview, T.K. testified that Thomas

touched her vagina while he was showing her something on his computer that depicted "a little girl and a man." Trans. Vol. II (Nov. 14, 2016), p. 237. T.K. further testified that she "[didn't] know * * * exactly what [the little girl and man] were doing." *Id.* T.K. also did not elaborate on whether Thomas's fingers went inside her vagina.

{¶ 8} With regard to abuse that occurred at the Rittenhouse residence, T.K. testified to an incident in which she was in Thomas's bedroom wearing no pants or underwear. T.K. claimed Thomas poured clear liquid on her vagina and put an "oval [-] shaped silver thing" that vibrated on the outside of her vagina. *Id.* at 227-228. T.K. testified it made her body feel "very weird." *Id.* at 228.

{¶ 9} During a second incident at Rittenhouse, T.K. testified that while in Thomas's bedroom, Thomas stood between her legs while she was lying on the bed. T.K. claimed she was wearing no pants or underwear and that Thomas started to rub his penis on the outside of her vagina until "wet stuff" came out of his penis. *Id.* at 226. During a third incident at Rittenhouse, T.K. testified that Thomas pulled his penis out of his pants in the garage and made her get on her knees and perform fellatio.

{¶ 10} T.K. testified that she did not initially tell her mom, V.T., about the incidents of abuse because she was scared that Thomas would hurt her. Although she could not remember exactly what Thomas said, T.K. claimed that Thomas threatened her and that she became scared when V.T. started asking her questions.

{¶ 11} V.T. testified that she first began asking T.K. questions about possible abuse in 2011, but that her conversations with T.K. were not productive. V.T. testified that at that time, T.K. did not provide her with any information that led her to contact the police. However, V.T. claimed that in 2015, when T.K. was 13 years old, T.K. initiated a

conversation with her that led her to question T.K. again. During this conversation, T.K. told V.T. about Thomas abusing her. Thereafter, V.T. and T.K. went to confront Thomas at his house, and Thomas insisted T.K. was lying about the abuse. V.T. then called the police and reported the abuse. T.K. testified that the last time she saw Thomas before confronting him was in late December 2013, when she was 11 years old.

{¶ 12} After disclosing the abuse, T.K. was physically examined by Dr. Lori Vavul-Roediger of Dayton Children's Hospital. Dr. Vavul-Roediger testified that the only abnormalities she discovered during T.K.'s examination were scars on T.K.'s wrist from self-inflicted cutting. The record indicates that T.K. had engaged in self-inflicted cutting since 11 or 12 years of age. In December 2015, a few months after disclosing the abuse by Thomas, T.K. was taken to the emergency room and referred to Kettering Behavioral Health Center after a severe cutting incident.

{¶ 13} In addition to cutting, the record indicates that T.K. had been diagnosed with severe major depressive disorder, post-traumatic stress disorder, general anxiety disorder, and gender dysphoria, as T.K. had expressed a desire to become a male. Melinda Kiser, a psychiatric nurse practitioner who treated T.K., testified that T.K. informed her that she wanted to transition into a male so that she does not get hurt again and because she thinks men are stronger.

{¶ 14} T.K.'s medical providers and counselors, including Kiser, Dr. Vavul-Roediger, pediatric psychologist Brenda Joyce Miceli, and T.K.'s counselor from school, Danielle Baker, testified that T.K. had reported hearing voices that put her down and sometimes tell her to hurt herself and others. When asked about the voices, T.K. testified that they never told her to say that Thomas abused her. Dr. Vavul-Roediger, Kiser, and

Baker confirmed that T.K. never reported the voices telling her to say Thomas abused her. Miceli, who had been treating T.K. since the disclosure of abuse, testified that she attributed the voices to T.K.'s depression. Miceli further testified that T.K. was being medicated with a mood stabilizer (Abilify), an anxiety medication (Buspar), and an anti-depressant (Zoloft).

{¶ 15} After the State presented its witnesses and rested its case, Thomas moved for a Crim.R. 29 acquittal of all the charges against him. The trial court granted an acquittal with respect to the first count in the indictment, which alleged that Thomas raped T.K. at the Rittenhouse residence. However, the trial court agreed to instruct the jury on the lesser included offense of gross sexual imposition for that count. The trial court then denied Thomas's Crim.R. 29 motion for all the remaining counts in the indictment.

{¶ 16} In his defense, Thomas presented one defense witness, Melissa Lowe. Lowe testified that she was an intake worker at CARE House who conducted a forensic interviewed of T.K. following T.K.'s disclosure of the abuse. Lowe testified regarding the proper techniques for conducting forensic interviews of children, such as using non-leading and non-suggestive questions. Lowe further testified that she used all the proper techniques when questioning T.K., but that she was unable to say whether the other individuals who questioned T.K. prior to her interview used the proper interview techniques. Thomas offered no other evidence in his defense.

{¶ 17} Once the defense rested, the parties gave their closing arguments. During its closing argument, the State discussed testimony from T.K. that supported each count in the indictment. For one of the counts, the State indicated that Thomas showed T.K. child pornography while he was abusing her at the Larchview residence. The State

made this inference from T.K.'s testimony that Thomas showed her something on his computer depicting a little girl and a man doing something that she did not understand. Thomas made no objection to this comment.

{¶ 18} Following closing arguments, the jury deliberated and found Thomas guilty of all the charges, including the lesser included offense of gross sexual imposition under Count 1 of the indictment. The trial court thereafter sentenced Thomas to serve an aggregate term of 20 years to life in prison and designated him a sex offender.

{¶ 19} Thomas now appeals from his conviction, raising three assignments of error for review.

## First Assignment of Error

{¶ 20} Thomas's First Assignment of error is as follows:

THE JURY VERDICT WAS CONTRARY TO LAW AND AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} Under his First Assignment of Error, Thomas contends his conviction for two counts of rape of a person under 13 years of age and four counts of gross sexual imposition of a person under 13 years of age was against the manifest weight of the evidence. In support of this claim, Thomas argues there was no physical evidence of the offenses and that his conviction was based solely on the testimony of T.K., who was not a credible witness. Thomas claims that T.K. was not a credible witness because she suffered from mental and emotional impairment; specifically, T.K. heard voices and took psychotropic medicine for daily functioning. We find no merit to Thomas's argument.

{¶ 22} "A weight of the evidence argument challenges the believability of the

evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Martin* at 175.

{¶ 23} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way. *State v. Bradley*, 2d Dist. Champaign No. 97 CA 03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 24} In this case, Thomas does not dispute that T.K. sufficiently testified

regarding each incident of sexual abuse for which he was convicted. Instead, Thomas claims the weight of the evidence did not support his conviction because there was no physical evidence of the abuse and because T.K.'s testimony lacked credibility due to her suffering from mental and emotional impairment.

{¶ 25} With regard to physical evidence, it is well established that physical evidence is not required to support a conviction for rape or gross sexual imposition against a manifest weight challenge. *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 18; *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 31 (9th Dist.); *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 54; *State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 19 (1st Dist.). Accordingly, the fact that Thomas's conviction was based solely on T.K.'s testimony and not any physical evidence did not render his conviction against the manifest weight of the evidence.

{¶ 26} In addition, the fact that the jury chose to believe T.K.'s testimony despite her mental illness did not render Thomas's conviction against the manifest weight of the evidence. Simply stated, "the jury was free to believe, or disbelieve, any part of the witnesses' testimony, and a conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution's testimony." (Citation omitted.) *State v. Arega*, 2012-Ohio-5774, 983 N.E.2d 863, ¶ 30 (10th Dist.).

{¶ 27} Here, the jury heard evidence concerning the mental and emotional issues for which T.K. was being medicated and chose to find T.K. credible despite those issues. With regard to hearing voices, T.K. specifically testified that the voices she heard did not tell her to say that Thomas abused her. T.K.'s medical providers, Dr. Vavul-Roediger and Melinda Kiser, as well as T.K.'s counselor, Danielle Baker, also testified that T.K.

never indicated the voices she heard told her she was sexually abused by Thomas. Kiser, who diagnosed T.K. with severe major depressive disorder, post-traumatic stress disorder, general anxiety disorder, and gender dysphoria also testified that T.K. was able to accurately convey things that have happened to her. Dr. Vavul-Roediger further testified that T.K. appeared to be in touch with reality when she examined T.K. following her disclosure of the sexual abuse. When considering the testimony of record, we do not find the jury clearly lost its way and created a manifest miscarriage of justice by believing T.K.'s testimony regarding the sexual abuse, as the jury was in the best position to weigh T.K.'s credibility.

{¶ 28} For the foregoing reasons, we do not find that Thomas's conviction was not against the manifest weight of the evidence and overrule his First Assignment of Error.

## Second Assignment of Error

{¶ 29} Thomas's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED BY ALLOWING THE NATURE OF THE VIDEOS SHOWN REGARDING COUNT VI TO BE CLASSIFIED AS CHILD PORNOGRAPHY.

{¶ 30} Under his Second Assignment of Error, Thomas contends the trial court erred in permitting T.K. to testify about certain material Thomas allegedly showed her on his computer during one of the incidents of sexual abuse, which the State classified as child pornography. Thomas claims such testimony amounts to evidence of other wrongs or bad acts that was inadmissible under Evid.R. 404(B). Thomas also claims the testimony was inadmissible under Evid.R. 403 because its probative value was

outweighed by the risk of unfair prejudice. Thomas further claims the State engaged in misconduct that prejudiced him when it referred to the material as child pornography in its closing argument. We disagree with Thomas's claims.

{¶ 31} Evid.R. 404(B) provides, in relevant part, that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 32} "The language of Evid.R. 404(B) indicates that the list of purposes for which evidence of other crimes, wrongs, or acts may be admitted is not an exhaustive listing." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 18. Rather, "evidence of other crimes, wrongs, or acts may be admissible for any purpose material to the issue of guilt or innocence as long as it is not being introduced for the purpose of showing the accused's propensity to commit bad acts." *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 49 (2d Dist.). A "consideration permitting the admission of certain other-acts evidence is whether the other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment' and are 'inextricably related to the crime.' " *Morris* at ¶ 13, quoting *State v. Curry*, 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975).

{¶ 33} "Generally, evidence of other acts is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for that purpose, Evid.R.

401, and (3) the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403." *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 32, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. Pursuant to Evid.R. 403(A), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 34} A trial judge has considerable discretion when determining whether other acts evidence is of such a nature that it falls within one of the purposes under Evid.R. 404(B) for which the evidence may be admitted. *Goldblum* at ¶ 32, citing *Morris* at ¶ 19. The Supreme Court of Ohio has stressed that "[u]nless the trial court has 'clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere' with the exercise of such discretion." *Kirkland* at ¶ 67, quoting *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 35} In this case, for one of the counts of gross sexual imposition, the State alleged that Thomas showed T.K. child pornography on his computer at the Larchview residence while he simultaneously touched her vagina with his fingers. Prior to T.K. testifying, Thomas objected that any reference to him showing T.K. child pornography would constitute "other acts" evidence that was inadmissible under Evid.R. 404(B). The trial court disagreed and permitted the State to question T.K. about what Thomas showed

her on his computer on grounds that it was inextricably related to the corresponding allegation of gross sexual imposition. We do not find that this was an abuse of discretion.

{¶ 36} Pursuant to R.C. 2907.05(A), "sexual contact" is an essential element of gross sexual imposition. The term "sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Therefore, the State was required to prove that Thomas touched T.K.'s vagina for the specific purpose of sexual gratification. "Whether [the] touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact." *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502 (2d Dist.1994).

{¶ 37} The fact that Thomas was allegedly showing T.K. child pornography while he touched her vagina was strong evidence that he was engaging in that act for purposes of sexual gratification. Therefore, based on the facts and circumstances of this case, we find it was reasonable for the trial court to conclude that the display of child pornography was inextricably related to the allegation of gross sexual imposition. The display of child pornography was also not offered to prove that Thomas acted in conformity with his bad character, but rather to establish an element of the gross sexual imposition offense in question.

{¶ 38} Moreover, pursuant to Evid.R. 403, the probative value of the evidence was not substantially outweighed by unfair prejudice. We note that T.K. testified Thomas touched her vagina while he showed her something on his computer depicting "a little girl and a man." Trans. Vol. II (Nov. 14, 2016), p. 237. T.K. further testified that she "[didn't]

know * * * exactly what [the little girl and man] were doing." *Id.* At no point did T.K. go into graphic detail as to what Thomas showed her and T.K. never used the phrase "child pornography." Although the jury could have reasonably inferred that T.K. was referring to child pornography, any prejudice arising from that inference was outweighed by the testimony's probative value, as it supported the sexual gratification element of gross sexual imposition. Accordingly, we do not find the trial court abused its discretion in permitting T.K. to testify regarding what Thomas showed her on his computer.

{¶ 39} Thomas also contends the State engaged in misconduct during its closing argument when the prosecutor classified the material Thomas showed T.K. on his computer as child pornography. Specifically, the State made the following statement:

[T.K.] told you that she would sit on his lap in the computer room and that there were two computers in there. And she would sit there, and he would show her child pornography. He would show the seven, eight, nine-year-old girl pornography. And when he did that, he put his hands down her pants and his fingers in her vagina. That's rape. That's the conduct that we're talking about for this count.

And she was sure that those fingers went in her vagina. Even [defense counsel] said, well, I mean are you sure? Maybe was he just pressing on it? You saw her face. You saw her reaction to that. Well, what do you mean? She knew that those fingers went inside of her. And she even testified she's had a tampon inside of her. She knows what that means. And that's what she told you he did to her while he showed her pornography.

Trans. Vol. III (Nov. 17, 2016), p. 482-83.

{¶ 40} Thomas claims the foregoing statement by the prosecutor was unfairly prejudicial and misled the jury. Thomas, however, never objected to the prosecutor's statement at trial and therefore waived all but plain error for appeal. To demonstrate plain error, it must be shown that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 41} It is well established that "[b]oth prosecutors and defense attorneys are given wide latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence." (Citations omitted.) *State v. Sammons*, 2d Dist. Montgomery No. 24064, 2011-Ohio-4296, ¶ 35; *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001) (noting "the prosecution is entitled to a certain degree of latitude in summation" and "may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument").

{¶ 42} In this case, not only is the inference that Thomas was showing T.K. child pornography reasonable, but it is unlikely that the outcome of the trial would have been different had the State not verbalized the inference during its closing argument. In other words, based on the evidence elicited at trial, it is likely the jury would have made the

inference on its own, and even without the inference, T.K.'s testimony was still sufficient for the jury to find Thomas guilty. We therefore find no plain error. *See State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 33 (2d Dist.), citing *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. ("[w]here it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged [prosecutorial] misconduct, the defendant has not been prejudiced, and his conviction will not be reversed").

**{¶ 43}** Upon reviewing the prosecutor's statement regarding child pornography, we note that the State confused the facts of the rape at Larchview (Count 4) with one of the gross sexual imposition counts at Larchview (Count 6). Specifically, the State claimed that Thomas showed T.K. the child pornography when he raped her by digital penetration at the computer. However, T.K. testified that when Thomas put his fingers inside her vagina at the computer she could not remember what he was doing on his computer. Trans. Vol. II (Nov. 14, 2018), p. 228-229. On the other hand, when Thomas showed her the computer image of a little girl and man doing something that she did not understand, i.e. the child pornography, T.K. testified that Thomas was "touching her vagina" and T.K. did not elaborate on whether Thomas's fingers went inside her. *Id.* at 237. Therefore, the record indicates Thomas showed T.K. the child pornography during the incident related to Count 6 (gross sexual imposition), not Count 4 (rape), which requires penetration. *See* R.C. 2907.02(A) and R.C. 2907.01(A).

**{¶ 44}** Although the prosecutor confused the facts of these two incidents during its closing argument, we do not find that the outcome of trial would have been different had the State not made this error. Regardless of what Thomas was showing T.K. on his

computer, the fact remains that T.K.'s testimony supported the jury's finding of rape and gross sexual imposition as to all charges.

{¶ 45} For the foregoing reasons, Thomas's Second Assignment of Error is overruled.

**Third Assignment of Error**

{¶ 46} Thomas's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED IN ALLOWING TESTIMONY REGARDING OTHER ACTS NOT INCLUDED IN THE INDICTMENT IN VIOLATION OF 404(B).

{¶ 47} Under his Third Assignment of Error, Thomas contends the trial court improperly allowed T.K. to testify regarding incidents of sexual abuse for which he had not been indicted. According to Thomas, allowing T.K. to testify about the additional incidents of abuse prejudiced him and constituted inadmissible "other acts" evidence under Evid.R. 404(B). We again disagree with Thomas's claims.

{¶ 48} As previously discussed under Thomas's Second Assignment of Error, the decision whether to admit evidence is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion. (Citations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 129-130.

{¶ 49} Also as previously discussed, "evidence of other acts is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for

that purpose, Evid.R. 401, and (3) the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403." *Goldblum,* 2d Dist. Montgomery No. 25851, 2014-Ohio-5068*,* at ¶ 32, citing *Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, at ¶ 68, citing *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 20.

{¶ 50} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. However, that list is non-exclusive and other-acts evidence generally may be admitted if relevant to show something other than the accused's criminal propensity. *Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, at ¶ 18; *Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, at ¶ 49. For example, evidence of other acts can be relevant to show that the offender groomed the victim for sexual activity. *State v. Jeffries*, 2018-Ohio-162, 104 N.E.3d 900, ¶ 27 (8th Dist.). " 'Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity[.]' " *Williams* at ¶ 21, quoting *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir.2011).

{¶ 51} With regard to sexual abuse cases, this court stated the following in *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317:

The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries the potential for the most virulent kind of prejudice for the accused. * * * That is even more true in a case such as this

where the other acts involve conduct similar or identical to the offense charged. In cases where evidence has been admitted for a very limited purpose and that evidence tends to show that Defendant has committed other criminal acts, the jury should be instructed that such evidence must not be considered by them as proof that defendant committed the crime charged. * * * The limiting instruction should be given at the time the 'other acts' evidence is received, and it has been held that the failure to give any limiting instruction constitutes plain error.

(Citations omitted.) *Id.* at ¶ 13.

**{¶ 52}** In *Shaw*, the State elicited "extensive testimony" from three teenage victims who testified they had endured ongoing sexual abuse by the appellant, their father. *Id.* at ¶ 11. It was noted that, over the years, the abuse of each victim had occurred multiple times each week. *Id.* While each of the victims testified to several specific instances of abuse, they each also repeatedly testified, over ongoing objections, that the abuse had happened many other times. *Id.* On appeal, we held there was no justification for the extensive amount of "other acts" testimony presented. *Id.* at ¶ 14.

**{¶ 53}** In so holding, we noted that "at trial the prosecutor merely stated that she needed to talk to the witnesses 'about what happened during these times so I can move on to what the next incident will be. There are so many incidents.' " *Id.* at ¶ 12. We found that "[t]his cursory explanation fail[ed] to establish any of the exceptions under Evid.R. 404(B)." *Id.*

**{¶ 54}** We also found that "[e]ven if some minimal reference to the pattern of abuse as part of the fabric of the victims' lives was more relevant than prejudicial, the pervasive

nature of the testimony precluded Shaw's right to a fair trial. *Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, at ¶ 14. We further found it significant that the trial court gave no limiting instruction regarding the "other acts" testimony, either at the time the testimony was offered or in the jury instructions at the close of the trial." *Id.*

**{¶ 55}** Later, in *State v. Shah*, 2d Dist. Montgomery No. 25855, 2014-Ohio-1449, we distinguished *Shaw* under circumstances where the State presented minimal evidence about an unindicted incident that occurred shortly before the crime charged. Specifically, we explained in *Shah* that:

> In *Shaw*, we held that the trial court abused its discretion by admitting an "extensive amount of 'other acts' evidence, particularly since the court gave no limiting instruction regarding that evidence." * * * *Shaw* is distinguishable, however, due to the extensive and repeated testimony allowed in that case about years of abuse that was alleged to have occurred multiple times each week regarding each of the defendant's three daughters, when the defendant was only charged with fifteen counts of Rape and ten counts of Sexual Battery. * * * In addition, we relied on the State's failure to provide the trial court with a "proper justification for the 'other acts' evidence * * *."

> In the case before us, the State presented a minimal amount of evidence about an incident that occurred very shortly before the alleged crime. This was appropriate, because of the State's burden of proof, and because Shah placed his state of mind, or purpose, at issue.

(Citations omitted.) *Id.* at ¶ 30-31.

{¶ 56} Other courts have also distinguished *Shaw* under circumstances where there were only minimal, vague references to other acts that did not reach the extensive and pervasive nature of the testimony at issue in *Shaw*. *See, e.g., State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 66; *State v. Czech*, 8th Dist. Cuyahoga No. 100900, 2015-Ohio-1536, ¶ 31-33.

{¶ 57} Most recently, in *State v. Hernandez*, 2018-Ohio-738, 107 N.E.3d 182 (8th Dist.), the Eighth District Court of Appeals held that the trial court did not abuse its discretion in permitting a child victim to testify regarding unindicted sexual abuse because the testimony was minimal, vague, and did not prejudice the appellant. *Id.* at ¶ 53. In that case, it was alleged the appellant sexually assaulted the victim twice, but at trial, the victim testified that there were other instances between the first and second sexual assaults when the appellant would come up behind her and touch her breasts. *Id.* at ¶ 44-52. These instances were not indicted because the victim could not remember a specific enough time frame as to when the conduct occurred. *Id.* at ¶ 45. At trial, the State argued that the purpose for eliciting the testimony was to prove the element of force and to establish the defendant's plan or motive and his pattern of conduct. *Id.*

{¶ 58} In the present case, the "other acts" testimony in question was similar to that in *Hernandez* because T.K.'s testimony regarding the unindicted acts was not extensive and pervasive, but minimal and vague. In fact, given the nature of T.K.'s testimony and the similarity in the incidents of abuse, it was difficult for this court to identify the unindicted instances of abuse in question. However, after a careful review of the record, this court could discern three unindicted instances of abuse testified to by T.K.

{¶ 59} The first unindicted incident was discussed when T.K. initially began

testifying about the abuse. Specifically, T.K. explained that she first recalled the abuse happening when she was 6 or 7 years old and that it occurred when Thomas touched her vagina at the Larchview residence. T.K. could not remember where in the Larchview residence the incident happened or whether Thomas touched her overtop or underneath her clothes.

{¶ 60} The second unindicted incident was discussed by T.K. immediately after she testified regarding the first incident. The prosecutor asked T.K. if she remembered another time Thomas touched her and T.K. testified that she recalled a time when Thomas touched her vagina underneath her clothes while she was sitting at Thomas's computer. T.K. testified that she did not remember what Thomas was showing her on his computer and that she did not know whether he touched the inside or outside of her vagina. T.K. also never identified which house she was in when this incident occurred.

{¶ 61} T.K. also briefly mentioned a third unindicted incident at Larchview when she claimed Thomas put his fingers inside her vagina. T.K. could not recall the room in which the incident occurred, and the only detail she provided about the incident was that it hurt her.

{¶ 62} We note that it is clear from the record that T.K. struggled with testifying about the abuse. The record indicates that fourteen-year-old T.K. was holding a toy stuffed animal while she was testifying and that, when it came to describing the nature of the abuse, T.K. often responded "I don't know." At one point, when T.K. responded "I don't know" to a question regarding the abuse, the prosecutor asked T.K. whether she did not know the answer or whether it is just hard for her to talk about, and T.K. responded: "It's kind of hard to talk about it." Trans. Vol. II (Nov. 14, 2016), p. 219.

{¶ 63} T.K.'s struggle testifying made it difficult for the prosecutor to hone in on each specific incident alleged in the indictment and bill of particulars. Although T.K. had already briefly testified to six incidents of abuse when Thomas objected on "other acts" grounds, it was clear from the record that T.K. had not yet testified to all the specific incidents alleged in the indictment and bill of particulars.

{¶ 64} The State argues on appeal that the "other acts" testimony was relevant to establish that Thomas was grooming T.K. through an ongoing pattern of abuse; however, that reason was not given for the testimony at trial. Rather, the prosecutor stated the following in response to Thomas's "other acts" objection:

I know. I'm just asking for a little bit of leeway. I mean, it's pretty clear that she's distraught. I think the case law is clear that I'm not going to go through every single time, but I think that going outside of six, given her emotional state, is not unheard of considering what the case law is. * * *

I understand that I'm introducing other acts, but she can't just be limited to just six when this case has happened to her systematically. So I am not going to, like go—I'm obviously not going to hard specifics. I don't know, I don't know, I don't know, I don't remember. Sure he touched me. I think that is a far cry from bringing up every single incident every single time in great detail. She's bouncing around a little bit. * * * And I think that I have the leeway to have her bounce around a little bit. And now I'm going to hone in under these specific ones.

Trans. Vol. II (Nov. 14, 2016), p. 229-230, 233.

{¶ 65} The prosecutor's statement indicates that T.K.'s testimony regarding the unindicted incidents was a product of the State attempting to get a 14-year-old emotionally distraught victim to focus on the incidents of abuse specified in the indictment. Although the State's explanation did not provide a specific exception under Evid.R. 404(B), the State's reasoning was in sharp contrast to the "cursory explanation" provided in *Shaw*, as there was no indication that the teenage victims in *Shaw* were having difficulty testifying about their abuse.

{¶ 66} After considering T.K.'s age, her emotional distress, and the time that had passed since the abuse, the trial court permitted the State to continue questioning T.K. about the abuse in order to hone in on the incidents that were alleged in the indictment and bill of particulars. In doing so, the trial court stated: "I understand they're other acts, but I do believe that given the obvious emotional turmoil that this child is experiencing that some leeway is appropriate." *Id.* at 232. Thereafter, the trial court advised the State to lead T.K. to speak only of the indicted incidents and noted that it would "deal with the jury with an appropriate instruction regarding the situation[.]" *Id.* at 235.

{¶ 67} During the trial court's jury instructions, after going through each indicted count in detail, the trial court instructed the jury as follows: "Your determinations in this case are confined to whether the State of Ohio established by proof beyond a reasonable doubt the conduct alleged in each count of the indictment. *When making these determinations, you may only consider the testimony relating to each count of the indictment.*" (Emphasis added.) Court's Exhibit I. Therefore, the present case is also distinguishable from *Shaw* in that a limiting instruction was provided to the jury.

{¶ 68} Under the circumstances of this case, we find that the trial court acted

reasonably in permitting the State to continue questing T.K. about the abuse so that the State could hone in on the incidents alleged in the indictment. We also find that Thomas did not suffer any prejudice as a result. The "other acts" testimony at issue was brief, vague, and consisted of only three unindicted acts that were almost indistinguishable from some of the indicted acts. The trial court also specifically instructed the jury to only consider the testimony related to the indicted conduct, and "it must generally be presumed that the jury followed the instructions of the trial judge." *State v. Ferguson*, 5 Ohio St.3d 160, 164, 450 N.E.2d 265 (1983). Therefore, given T.K.'s delicate emotional state, her difficulty testifying, the trial court's jury instruction, and the non-extensive testimony regarding the three unindicted incidents, the trial court did not abuse its discretion in permitting the "other acts" testimony in question.

{¶ 69} For the foregoing reasons, Thomas's Third Assignment of Error is overruled.

## Conclusion

{¶ 70} Having overruled all assignments of error raised by Thomas, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurring:

{¶ 71} In my view, the majority is correct that this case is more akin to *Shah* than it is to the *Shaw case.* In *Shaw,* the other acts evidence was pervasive and extensive, here it is neither.

**{¶ 72}** However, I write separately to emphasize that the instruction which the majority characterizes as limiting is quite simply deficient. Although the jury was instructed "you may only consider the testimony relating to each count of the indictment," this is not a comprehensive "other acts" instruction. The trial court should have provided the instruction from Ohio Jury Instructions, CR Section 401.25:

1. OTHER ACTS. Evidence was received about the commission of (crime[s]) (wrong[s]) (act[s]) other than the offense(s) with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in (conformity) (accordance) with that character. If you find that the evidence of other (crime[s]) (wrong[s]) (act[s]) is true and that the defendant committed (it) (them), you may consider that evidence only for the purpose of deciding whether it proves

   **(Use appropriate alternative[s])**

   a. the absence of (mistake) (accident),

   **(or)**

   b. the defendant's (motive) (opportunity) (intent or purpose) (preparation) (plan) to commit the offense charged in this trial,

   **(or)**

   c. knowledge of circumstances surrounding the offense charged in this trial,

   **(or)**

   d. the identity of the person who committed the offense in this trial,

**(or)**

e. (describe other purposes).

That evidence cannot be considered for any other purpose.

**{¶ 73}** Nevertheless, on this record, I cannot say that the minimal evidence adduced of other acts prejudiced Thomas such that a new trial is warranted.

Copies sent to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Amy E. Ferguson
Hon. Erik R. Blaine